**STATE of Maine**

**v.**

**Armand BROCHU.**

Supreme Judicial Court of Maine.

Dec. 12, 1967.

Ronald E. Ayotte, County Atty., Alfred, Richard S. Cohen and Daniel G. Lilley, Asst. Attys. Gen., Augusta, for plaintiff.

Wiliam P. Donahue, Roger C. Nadeau, Biddeford, Charles W. Smith, Saco, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE and WEATHERBEE, JJ.

WILLIAMSON, Chief Justice.

This case is before us on report from an interlocutory order or ruling denying a motion to supress evidence obtained on an allegedly unlawful search and seizure. Maine Rules of Criminal Procedure, Rule 37A(b) (appeal of interlocutory ruling), and Rule 41(e) (search and seizure); U.S.Constitution, Fourth Amendment, and Maine Constitution Article I, Sec. 5 (unreasonable searches and seizures).

■ The facts found by the Court below stand unless clearly erroneous. State v. MacKenzie, 161 Me. 123, 210 A.2d 24. See Robbins v. MacKenzie (CA 1) 364 F.2d 45. In accepting the facts so found by the Court in testing the decision on the motion to suppress, we do not thereby indicate that the same facts necessarily should be found by a jury. Our problem involves only the disposition of a preliminary or interlocutory motion designed to govern the case in this respect in the event of a jury trial.

Mrs. Monique Brochu, wife of the defendant, died on November 24, 1966 from the ingestion of methyl alcohol on November 18, 1966. In the investigation of her death, required under the circumstances, the defendant was requested to meet with the police and the county attorney at the police station in Biddeford on his return from Canada on December 5, 1966, a few days after his wife's funeral. The case was in the investigatory stage. The defendant did not then stand as an accused. Understandably, to use the words of the police, "in a case of this nature, everyone is a suspect." At the time the husband met with the police, however, it was unknown whether the death by poisoning was accidental or was a homicide.

The defendant consented to the authorities searching his home in Biddeford, and indeed urged that they do so, indicating his desire that the cause of his wife's death be established. Thereupon, in the early afternoon of December 5 police went to the defendant's home and found nothing pointing to the cause of death. However, they took five whiskey and vodka bottles with them on returning to the police station at about 4:30 P.M.

At about five o'clock Nancy, the twelve year old daughter of the defendant, came to the police station in the company of an aunt. There she gave a statement to the police implicating her father in her mother's death through the preparation of a drink taken by her mother on November 18 prepared from a liquid poured from a vodka bottle by her father and said by him, so Nancy said, to be pure alcohol. At 7:30 or 8 o'clock in the evening on the strength of an affidavit by Nancy, a search warrant was obtained for "a container or vile containing methyl alcohol" on "the premises known as the dwelling of Armand A. Brochu located at 20 Forest Street, in the City/Town of Biddeford, County of York and State of Maine, said premises being owned/occupied by Armand A. Brochu." At 8:40 in the evening the defendant was arrested at his home and taken to the police station, and later in the evening to the county jail. The defendant's nineteen year old daughter Charlene returned to the home from work in the even-

ing after the arrest of her father. Throughout the remainder of the period in which we are interested, Charlene was at the home with her twelve year old sister Nancy, a younger brother and two aunts who came to be with the children after the defendant was arrested. The warrant ran in the daytime and no action was taken thereon that night.

On the morning of December 6, a Lieutenant and the Chief of Police, of the Biddeford police, and a representative from the Attorney General's office came to the defendant's home. Charlene met them at the kitchen door and on their request invited them into the house. In the presence of Charlene, two aunts, and the two younger children, the police lieutenant said that he had a search warrant. It does not appear that the aunts had any conversation with the officers, and in any event they made no objection to the search.

The officers found and took with them property now in possession of the State consisting of a funnel, three small glass jars, a cloth, and of particular significance a vodka bottle which contained, as shown by later laboratory tests, a small quantity of methyl alcohol. The funnel, jars and cloth (the items other than the vodka bottle) were not, it will be noted, described in the search warrant. The vodka bottle was found stuffed in the upholstery of a chair in the defendant's garage, a building on the premises not physically connected with the dwelling house proper.

After hearing, the Court ruled that the consent of the defendant to search his home applied not only to the search made before his arrest, but as well to the search and seizure on the following day after his arrest and the issuance of the search warrant.

■ In the words of the Court, "this consent was valid and viable and remained valid and viable until specifically revoked, or its purpose accomplished." We are unable to agree with his conclusion that defendant's consent continued beyond the search of December 5. Without question, the consent was "unequivocally, specifically and intelligently" given. United States v. Thompson (CA 2) 356 F.2d 216. Cf. State v. Thompson, 273 Minn. 1, 139 N.W.2d 490, 504, 506.

The officers entered the defendant's home on the 5th under the protection of his consent. By nightfall, however, the defendant had ceased to be the husband assisting in the solution of his wife's death and had become the man accused of his wife's murder by poison held under arrest for hearing.

■ When the defendant became the accused, the protective cloak of the Constitution became more closely wrapped about him. For our purposes we need consider only the Federal Constitution. Like principles are applicable under our State Constitution. Article I, Section 5. There is a particularly heavy burden on the State to show consent to a search and seizure without a warrant when the defendant is under arrest. Burke v. United States (CA 1) 328 F.2d 399; Judd v. United States, 89 U.S App.D.C. 64, 190 F.2d 649.

The consent of December 5 in our view should be measured on the morning of the 6th by the status of the defendant as the accused. There is no evidence whatsoever that the consent of the 5th was ever discussed with the defendant at or after his arrest, or that he was informed of the State's intent to enter and search his home on the 6th on the strength of a continuing consent. We conclude, therefore, that the consent of the defendant had ended by December 6, and accordingly the officers were not protected thereby on the successful search of the 6th.

■ The case, however, does not end at this point. The decision may not be sustained for the reason given, but under familiar principles it stands if valid on other grounds. The test is whether the result is sound.

The State further urges as an independent ground for the denial of the motion to suppress that the nineteen year old daughter Charlene gave a valid consent to the search of her father's home. For purposes of this issue we assume the search was, in absence of such consent, unlawful.

■ The argument of the State fails to convince us. In the first place the consent was in submission to apparently legal authority, that is, to officers with a search warrant. If the warrant was valid, no consent to enter and search was necessary. The officers' authority was contained in the warrant. Charlene's consent under such circumstances was of no more consequence than would have been an objection on her part. If the warrant was not valid—and this is the assumption made on this issue— the principle is operative that submission to the presence of police does not rise to the dignity of consent to search. United States v. Linderman (U.S.D.Ct.N.Y.) 32 F.Supp. 123. The officers with a search warrant were at the door; they intended to enter and search; they informed Charlene of the warrant; she consented to their entry and search. No stronger case of submission to entry under a search warrant can well be put. The consent of Charlene has no meaning apart from the search warrant.

The third issue for decision on the report is whether the search was "made pursuant to a valid search warrant obtained under Rule 41 of the Maine Rules of Criminal Procedure." The defendant's objection to the warrant is limited to a claim of invalidity arising from insufficiency of description of the place to be searched.

■ The garage was plainly part of the defendant's house in which he was secure against unreasonable searches and seizures under both Federal and State Constitutions. Rosencranz v. United States (CA 1) 356 F.2d 310; United States v. Sims (U.S.D.C. Tenn.) 202 F.Supp. 65; 5 Orfield, Criminal Procedure Under The Federal Rules §

41:12. There is no suggestion by the State that the officers had a right to enter and search the garage in the absence of consent or a valid search warrant.

■ We hold that the garage came within the meaning of the phrase of the Fourth Amendment, "particularly describing the place to be searched," and to like effect, of our Maine Constitution in Article I, Section 5, "without a special designation of the place to be searched."

■ The test of sufficiency of description is that the officers thereby are enabled to ascertain and identify the place intended by reasonable effort. Steele v. United States, 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757; Metcalf v. Weed, 66 N.H. 176, 19 A. 1091 ("the premises now occupied by Parker Metcalf, situated in Haverhill," sufficient on its face). Reasonable certainty is required to meet the constitutional safeguards. A technical description of the place to be searched is not necessary. People v. Watson, 26 Ill.2d 203, 186 N.E.2d 326; 5 Orfield, Criminal Procedure Under The Federal Rules § 41:43; 4 Wharton's Criminal Law and Procedure §§ 1553, 1554. Cf. United States v. Kenney (D.C.D.C.) 164 F.Supp. 891.

■ No one could have been misled by the description of the premises in the warrant. The officers were directed to the premises at 20 Forest Street owned or occupied by the defendant. The description to this point covers the dwelling house proper, the garage, and any other outbuildings which we associate with and include within a house or home.

Surely the officers did not intend to limit their authority to search to a particular part of the defendant's home property. In our common experience it would not be unlikely that empty bottles would be found with waste in a garage or outbuilding. The search was not limited to the pantry where in fact the child Nancy had seen the bottle. The police knew when the warrant

was sought that they were after a container or vial containing methyl alcohol which they had solid reason to believe was at the defendant's home. By "home" we mean on the premises at 20 Forest Street.

The clause "known as the dwelling of Armand A. Brochu" does not, in our view, limit the breadth of "premises at 20 Forest Street" to the dwelling house proper. In these days a typical home includes a garage, attached to or detached from the building in which the family eats and sleeps.

In Drummond v. United States (CA 8) 350 F.2d 983, at p. 989, in holding consent to search the residence included the garage, the Court said:

> "It was an ordinary type of garage outbuilding in a small back yard. If it is subject to Fourth Amendment protection as part of the 'house' or curtilage, * * * it should be equally subject to the effect of a consent to entry and search of one's 'residence'."

The same principle is applicable to a description in a search warrant. "Dwelling" and "dwelling house" have different meanings under different circumstances. State v. Meservie, 121 Me. 564, 118 A. 482 (arson); Robbins v. Bangor Railway & Electric Co., 100 Me. 496, 62 A. 136, 1 L.R. A.,N.S., 963 (water service). The general principles are discussed in Marshall v. Wheeler, 124 Me. 324, 327, 128 A. 692, 693, as follows:

> "At common law, the term 'castle' appears to have been practically coextensive with dwelling house. It included not only the house or building in which the owner or tenant slept or lived in the ordinary sense of the term, but all that cluster of buildings connected or used with it. 4 Blackstone's Com. *224, *225; Bish.Statutory Crimes, §§ 278, 290. .
>
> "As the last-named authority puts it: 'One need not so constitute his habitation that all the rooms will be under one roof. Therefore the term "dwelling house" em-

braces the entire congregation of buildings, main and auxiliary used for abode. "It includes," says Hale, "The privy, barn, stable, cowhouse and dairy houses, if they are part of the messuage, though they are not under the same roof or joining, or contiguous to it." '

> "Again, in his work on Criminal Law (Vol. 2, § 104, p. 2) the same author says: 'The term "dwelling house" also includes the entire cluster of buildings not separated by a public way which are used for purposes connected with the habitation.'
>
> "And in his Criminal Procedure (volume 1, § 194) he further says: 'Any building other than that technically termed the castle or dwelling house, which consists of the cluster of buildings used for habitation and its collateral purposes * * * may even in civil cases be broken open to make an arrest.' "

*Marshall* decided only the narrow point that a shed connected to the house and barn was part of the dwelling; and hence entry by an officer to make an attachment of property in the barn was unlawful. The principles stated, however, have a broader application.

The meaning of "dwelling" may differ in zoning and in insurance. We do no more than point out that "dwelling" gains its meaning from the circumstances. Here the "dwelling" fairly and reasonably means the defendant's "home," his "house," his premises at 20 Forest Street, or if one wills, his "castle."

We are aware that under our earlier cases the search warrant here might have been held invalid for lack of sufficient description. In Jones v. Fletcher, 41 Me. 254, the Court held that a warrant to search for certain liquors "in a certain dwelling-house in said city of Augusta, situate on Winter street, so called, and being the same *premises* occupied by said Jones," did not authorize a search of plaintiff's barn, and that "the barn [did] not come within the

terms used as descriptive of the place to be searched." The case may be distinguished from that at bar by the designation of the dwelling house "being the same premises occupied * * *" The direction there was to a particular building; here to the premises. In State v. Comolli, 101 Me. 47, at p. 48, 63 A. 326, involving a warrant to search a dwelling house for liquor, the Court in a dictum said:

"A complaint and warrant merely to search the premises of a person would not authorize the search of a dwelling house, but that is not the case at bar."

■ Insofar as our decisions heretofore point to a conclusion that this search warrant is invalid, we depart from them. The protection of the constitutional rights of the citizen against unreasonable searches and seizures does not demand a test more restrictive than reasonable certainty in the description or designation of the place to be searched.

■ The State is prohibited on constitutional grounds from the use of evidence unlawfully secured through an illegal search and seizure. The exclusionary rule of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L. Ed.2d 1081, has been the law of the land since 1961. It does not follow, however, that the State is shackled by meaningless restrictions. The purpose of the exclusionary rule developed in *Mapp* we must remember, is not to keep evidence out of the case for lack of weight, or value, or trustworthiness, but is to compel law enforcement authorities to conduct searches and seizures within constitutional limits. Reasonableness not technical niceties governs and controls the activities of the law enforcement authorities. This warrant under the reasonable certainty test directed the officers to the place where the vodka bottle was found.

The validity of the search was not discredited by the seeming uncertainty of the officers as to the source of their authority. The entry was after a statement that the officer or officers had a search warrant. The warrant, however, was marked "not executed." There is no record of a receipt for property taken or return of the warrant with inventory as provided in Rule 41.

■ The receipt for property taken and the return of the warrant with inventory are ministerial acts. Failure to perform acts of this nature do not void a search warrant or the search conducted under its protection. Rule 41(d); 5 Orfield, Criminal Procedure Under The Federal Rules, § 41:46.

■ The officers, whether they considered they were acting by consent or under the warrant, acted in fact within the safe conduct of the warrant. Mistaken belief (or it may be uncertainty) on their part as to the source of their authority does not negate the legality of a search reasonably conducted under the warrant. The search was lawful under a valid warrant.

Lastly, the issue is presented whether "if under the facts the search warrant was defective in origin, form or execution under Rule 41 of the Maine Rules of Criminal Procedure, did these defects abridge the constitutional rights of the Defendant."

■ In our opinion with reference to the vodka bottle, the constitutional rights of the defendant were in no way abridged by the action of the police under the warrant. We have discussed earlier the failure to comply with Rule 41 in certain requirements ministerial in nature. We have not, of course, gone beyond the points raised by the parties either in the report and arguments. It is not our function to search for defects, if any, which are not called to our attention.

■ We reach a contrary result with reference to the seizure of the funnel, the three glass jars, and the cloth. These items do not come within the description in the warrant of the property for which the search was instituted. Their use in evidence must be suppressed.

The Justice below in his report stated that "[he] did not deem it necessary to pass upon the remaining two issues raised by the Defendant; namely, whether there was a valid consent by a third party to search the Brochu house, or whether the proceedings under the search warrant, or relating thereto, were invalid."

The case comes to us therefore with no findings of fact on any issue other than the consent of the defendant. From the terms of the report, the State and the defendant agreed that the issues we have considered "are open for decision" in the Law Court. In our examination of the record there appear to be no facts in dispute of consequence in passing upon the points raised and argued by the State and the defendant.

We have read the record in the light most favorable to the defendant. We have passed upon all issues raised, in accordance with the agreement of the parties. It would serve no useful purpose to remand the case for further hearing and decision on the motion to suppress.

The net result of our decision is that the motion to suppress should be denied with reference to the vodka bottle and granted with reference to the funnel and other property seized.

The entry will be

Remanded for action not inconsistent herewith.