368 A.2d 794

**COMMONWEALTH of Pennsylvania**

v.

**Mark ECKERT, Appellant.**

Superior Court of Pennsylvania.

Submitted June 14, 1976.

Decided Dec. 15, 1976.

---

6. See *Stapleton v. Dauphin County Child Care Service, supra,* and Note 3, *supra.*

426

William F. Ochs, Jr., Public Defender, Reading, for appellant.

Charles M. Guthrie, Jr., Asst. Dist. Atty., Reading, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

Appellant, Mark J. Eckert, was tried before a jury and found guilty of robbery, theft by unlawful taking or disposition and recklessly endangering another person. He appeals his conviction following denial of motions for a new trial or in arrest of judgment.

At 9:30 P.M. on December 14, 1974, a masked, armed individual robbed Anspach's IGA Market in Womelsdorf, Berks County. One cashier succeeded in partially foiling the robbery by pretending the register would not open. Another cashier was forced at gunpoint to turn over the cash in the register. Two cashiers running after the robber as he left the store saw him get into a "green medium sized car" or a "light green Firebird." Two police officers sitting in a parking lot across from the market saw the man proceed from cashier to cashier, run out of the market and enter a "1970 or 1971 green Pontiac Firebird." Unable to stop the car in the parking lot, the officers fired at the car as it sped away and several of the bullets struck the fleeing vehicle. Giving chase, the police lost the vehicle in a field. A description of the car was broadcast to police in the area.

Approximately an hour and one-half later, at 11:07 P.M., two State Police officers stopped appellant's car on the highway about 12 miles from the market where the robbery occurred because it fit the description of the getaway vehicle as broadcast. They looked at the car briefly, took information concerning appellant's identity and then allowed him to leave. Appellant, who was on parole at the time of his encounter with the police, reported to his parole officer as the terms of his parole required. The parole officer informed the investigating officers of appellant's parole status, prior record and lack of permission to be in the area where he was stopped. The information led to further investigation of appellant as a suspect in the market robbery.

■ The State Police obtained two warrants to search appellant's car. Before executing the first warrant, the police read the warrant to appellant and advised him of his *Miranda* rights. The police then told appellant that they were going to secure a search warrant for his home. Having been informed of his rights, appellant nevertheless told the police a warrant would not be necessary since he would consent to a search of his home. See *Commonwealth v. Richard*, 233 Pa.Super. 254, 336 A.2d 423 (1975). Appellant gave a written consent to the search.[1] The searches disclosed damages to and recent repairs on his car. The repairs were apparently made at the places where the police bullets struck the car. A .38 caliber copper colored bullet was found inside the patched spare tire in the trunk. Two external car mirrors were discovered during a search of appellant's premises. One of them was broken. The glass of the broken mirror matched pieces of glass found at the scene of the crime.

■■ First, appellant contends the evidence was insufficient to sustain his conviction. The test of the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth, the trier of fact could reasonably have found all the elements of the crime had been established beyond a reasonable doubt. *Commonwealth v. Smallwood*, 465 Pa. 392, 350 A.2d 822 (1976); *Commonwealth v. Robson*, 461 Pa. 615, 337 A.2d 573 (1975); *Commonwealth v. Moore*, 226 Pa. Super. 32, 311 A.2d 704 (1973). The Commonwealth may sustain this burden by means of wholly circumstantial evidence, though it cannot rest solely on mere suspicion or conjecture. *Commonwealth v. Goodman*, 465 Pa.

---

1. On appeal, appellant raises as an issue the voluntariness of his consent. Since it was not raised in any of the proceedings below it has been waived and will not be considered for the first time on this appeal. *Commonwealth v. Mitchell*, 461 Pa. 555, 337 A.2d 292 (1975); *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975).

367, 350 A.2d 810 (1976); *Commonwealth v. Cimaszews-ki,* 447 Pa. 141, 288 A.2d 805 (1972); *Commonwealth v. Stevens,* 237 Pa.Super. 457, 352 A.2d 509 (1976).

Appellant argues that the evidence is insufficient since no witnesses identified him as the masked person committing the robbery. However, the record establishes appellant's car was definitely identified as the vehicle which left the scene of the robbery. the two police officers on the scene fired eight shots, some of which hit the which left the scene of the robbery. The two police offi- of "plastic casing wadding" from a .38 caliber shell, matched the glass in the broken mirror discovered at appellant's home. The bullet found inside the spare tire in the trunk came from the gun of one of the officers. Dents and marks from pellets contained in the shots fired appeared on the car. Furthermore, the evidence shows that appellant replaced the side mirrors, patched the metal and touched up the paint on the side of the car and plugged the hole in the spare tire.

This was strong circumstantial evidence and could sufficiently persuade a jury to find appellant guilty beyond a reasonable doubt. Although two witnesses testified appellant was with them in Altoona, three hours away, until 8:30 P.M., they did not persuade the jury that a reasonable doubt existed. An alibi may negate an essential element of the Commonwealth's case; and, standing alone or with other evidence, it may be sufficient to leave a reasonable doubt in the minds of the jury. *Commonwealth v. Rose,* 457 Pa. 380, 321 A.2d 880 (1974); *Commonwealth v. Winebrenner,* 439 Pa. 73, 265 A.2d 108 (1970); *Commonwealth v. Bonomo,* 396 Pa. 222, 151 A.2d 441 (1959). It is within the sole province of the trier of fact to pass on the credibility of witnesses and the weight to be accorded the evidence produced, *Commonwealth v. Davis,* 466 Pa. 102, 351 A.2d 642 (1976); *Commonwealth v. Robson,* 461 Pa. 615, 337 A.2d 573 (1975). The jury is free to believe all, part or none

of the evidence. *Commonwealth v. London,* 461 Pa. 566, 337 A.2d 549 (1975); *Commonwealth v. Smith,* 457 Pa. 638, 326 A.2d 60 (1974). The jury, as it may, chose to disbelieve the alibi evidence. Hence, the evidence, though circumstantial, was sufficient to support the conviction without eyewitness identification.

Appellant next claims the court below erred by admitting into evidence the two external car mirrors found in the shed adjacent to appellant's mobile home during a search of the premises. Appellant argues the search of the shed violated his right to be free from unreasonable searches and seizures since the written consent did not mention the shed, but only the mobile home. He also argues the consent did not describe the mirror as an item to be searched for.

The record of the suppression hearing shows that throughout the investigation the State Police observed the procedures designed to safeguard appellant's constitutional rights. Before conducting either of the two searches of appellant's car, they secured search warrants. Prior to executing the first warrant, the State Police read the warrant to appellant and informed him of his rights. After being informed of his constitutional rights, appellant gave his written consent to a search of his trailer. The police, having noticed that the two external car mirrors had been replaced, asked appellant if he had the original mirrors and he told the police the mirrors were at the trailer. Appellant did not refute this testimony. At the suppression hearing appellant admitted during direct examination that he gave his consent to the search "of the premises hereinafter mentioned" and described as a "Brown and white, 70 x 17 Flamingo House Trailer, 218, Box 600 Rock Glen Road, Avoca, Pennsylvania." The record does not indicate any knowledge of the officers of the shed before arriving at the premises.

No Pennsylvania authority has been found which defines "premises" in the context of the description of the

place to be searched in either a search warrant or a written consent. Several other jurisdictions have discussed this meaning of the term "premises." These courts have held that the meaning of "premises" in a search warrant is not confined to the building(s) specified in the description. The term premises also "includes all property necessarily a part of the premises or so inseparable as to constitute a portion thereof." *Massey v. Commonwealth,* 305 S.W.2d 755 (Ky.1975); *State v. McClelland,* 215 Kan. 81, 523 Pa.2d 357 (1974); *State v. Caldwell,* 20 Ariz.App. 331, 512 Pa.2d 863 (1973). Two additional jurisdictions employing this definition have found outbuildings and other property included as a part of the premises. In *United States v. Long,* 449 F.2d 288 (8th Cir. 1971), a building was specifically described in the warrant. The incriminating evidence was discovered in a trash barrel located behind the described building. The court found that the barrel was a part of the "premises" and within the scope of the warrant. In *State v. Brochu,* 237 A.2d 418 (Me.1967), a detached garage was found to be a part of the "premises" described in the warrant by the street number of the house and the name of the owner.

In the instant case, the shed was located five to ten feet from the rear of the trailer on the property occupied by appellant. Appellant owned the shed and used it as a part of his mobile home as a storage area. Consequently, it was part and parcel of the premises as that term has been defined above. Appellant gave his consent to a search of the premises described by the location of the trailer. Indeed, even appellant seems to have considered the shed as an adjunct to the trailer, because he stated that the broken mirrors were at the trailer when, more particularly, they were in the shed. In light of the terms of appellant's consent, the search of the shed was not unreasonable.

Finally, appellant claims he should have been granted a mistrial following a remark made by the pros-

ecutor in his closing to the jury.[2]   The prosecutor's re-
mark related to a statement appellant made to the police
when he was stopped on the night of the robbery.   At
that time appellant produced a laminated identification
card indicating that he was a member of the parole
board, and sought to ingratiate himself with the police
by stating: "I belong with you guys.  I am in this with
you guys."   In closing, the prosecutor, alluding to this
out-of-court statement, called it a "song and dance."[3]   Of
course, appellant's statement was deliberately deceiving
because he was a parolee, not a member of the board.
Nevertheless, appellant argues that the prosecutor's com-
ment was so prejudicial that the court abused its discre-
tion in not granting his motion for a mistrial.

As the court below noted, this court discussed the
question of when improper remarks by the prosecutor
prejudice the defendant's right to a fair hearing and re-
quire a new trial in *Commonwealth v. Pfaff*, 233 Pa.Su-
per. 153, 161, 335 A.2d 751, 755 (1975):

> "There is no prophylactic rule, however, that mandates
> reversal for every improper comment.   Our Supreme
> Court has ordered a new trial in the following types of
> situations:   one, where the prosecutor brands the ap-
> pellant with epithets depicting him as vicious or crim-
> inal in nature, thereby arousing the jury's passions and
> prejudices, ('hoodlums' and 'animals', *Commonwealth
> v. Lipscomb*, 455 Pa. 525, 317 A.2d 205 (1974); mali-
> cious liar, *Commonwealth v. Potter*, [445 Pa. 284, 285
> A.2d 492], supra); two, where the prosecutor com-
> ments from personal knowledge or experience on the

2.   Appellant also questions the legality of the police stopping his
car on the night of the robbery.   Since this was not raised in any
proceeding below, it was waived and will not be considered now
for the first time.   *Commonwealth v. Mitchell*, 461 Pa. 555, 337
A.2d 292 (1975); *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d
213 (1975).

3.   Appellant did not testify at trial, so his credibility, *per se*, was
not in issue.

guilt or innocence of the accused, thereby implying the existence of some special or additional information not before the jury, (the prosecutor had 'no doubt' as to the guilt of the accused after a review of the evidence in the District Attorney's file in *Commonwealth v. Russell*, 456 Pa. 559, 322 A.2d 127 (1974)); three, where the prosecutor's comments are .not a fair statement of the evidence in the case, thereby misleading the jury and usurping its function. (See, e. g., *Commonwealth v. Toth*, 455 Pa. 154, 314 A.2d 275 (1974); *Commonwealth v. Revty*, 448 Pa. 512, 295 A.2d 300 (1972); but see, *Commonwealth v. McNeal* [456 Pa. 394, 319 A.2d 669], supra)."

Here, the prosecutor did not make a derogatory comment about appellant or give his personal opinion of appellant's guilt or innocence. It is undisputed that appellant was not a member of the board, so the prosecutor did not try to mislead the jury as to what evidence was presented to them. This remark was not of the type which requires the court to declare a mistrial. Cf. *Commonwealth v. Lipscomb*, 455 Pa. 525, 317 A.2d 205 (1974); *Commonwealth v. Revty*, 448 Pa. 512, 295 A.2d 300 (1972).

For the foregoing reasons, the judgment of sentence is affirmed.

SPAETH, J., concurs in the result.