389 A.2d 1156

**COMMONWEALTH of Pennsylvania**

v.

**William DARUSH, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 15, 1977.

Decided July 12, 1978.

346

Jeffrey E. Leber, Coudersport, with him Duvall & Leber, Coudersport, for appellant.

Harold B. Fink, Jr., District Attorney, Coudersport, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

William Darush, appellant, asks this court to review his convictions for two alleged violations of the Uniform Firearms Act. Appellant was charged with selling a firearm without a license [1] and for obliterating the serial number on a firearm.[2] For the reasons set forth below, we reverse both convictions.

Appellant argues that his conviction under 18 P.S. § 6112 was illegal because that provision only applies to "retail dealers," which he claims he is not. The provision in question says, "No retail dealer shall sell . . . any firearm without being licensed . . . ." Though the

---

1. Appellant was charged under the Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 P.S. § 6112 (1973), which reads:
 "No retail dealer shall sell, or otherwise transfer or expose for sale or transfer, or have in his possession with intent to sell or transfer, any firearm without being licensed as provided in this subchapter."

2. This alleged act is a violation of the Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 P.S. § 6117, which provides:
 "(a) No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on any firearm."
 "(b) Possession of any firearm, upon which any such mark shall have been changed, altered, removed, or obliterated, shall be prima facie evidence that the possessor has changed, altered, removed, or obliterated the same."

statute provides us with a definition of "firearm," [3] nowhere does it delineate who should be considered a "retail dealer." When the statute itself fails to define a term, case law tells us that the words of a statute are to be construed according to their common or popular meaning unless the context indicates a different construction. *Treaster v. Union,* 430 Pa. 223, 242 A.2d 252 (1968); *Harris-Walsh, Inc. v. Borough of Dickson City,* 420 Pa. 259, 216 A.2d 329 (1966); *Department of Labor and Industry, Bureau of Employment, Inc. v. Unemployment Compensation Bd. of Review,* 203 Pa.Super. 183, 199 A.2d 474 (1964); *Quaid v. Tax Review Bd. of City of Philadelphia,* 188 Pa.Super. 623, 149 A.2d 557 (1959). Furthermore, penal statutes are to be strictly construed in favor of the accused. *Commonwealth v. Cunningham,* 248 Pa.Super. 219, 375 A.2d 66 (1977).

In the instant case, we conclude that the legislature did not intend that private gun collectors, who only occasionally sell their firearms, should be required to obtain a license for these isolated transfers. As commonly used, the term "retail dealer" refers to a person who buys articles in gross or merchandise in large quantities and sells the same directly to the ultimate consumer by single articles or in small quantities. Black's Law Dictionary at 1479 (4th ed. 1968). Another indication of the legislator's intent can be found by contrasting Section 6112 with Section 6111 of the Uniform Firearms Act.[4] Section 6111(a) speaks generally of the sale of firearms but, unlike Section 6112, Section 6111 focuses on the activities of a "seller." Accordingly, it has been held that because Section 6111 refers to "sellers" in general, both retail and private sellers are included within the ambit of this provision. *Commonwealth v. Schaffer,* 72 D. & C.2d 772 (1975). A similar rationale in the instant case leads us to

**3.** A firearm is "Any pistol or revolver with a barrel less than 12 inches, any shotgun with a barrel less than 24 inches, or any rifle with a barrel less than 15 inches." The Act of December 6, 1972, P.L. 1482, No. 334, Sec. 1, 18 P.S. Sec. 6102 (1973).

**4.** The Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 P.S. § 6111.

conclude that the legislature meant to exclude *private collectors* when they drafted Section 6112.

■■ Since defendant was charged under Section 6112, supra, the Commonwealth necessarily had to prove that appellant was a retail dealer, according to the fundamental rule of law which holds that the Commonwealth has the never shifting burden of proving all elements of the charged offense. *Commonwealth v. Williams,* 463 Pa. 370, 344 A.2d 877 (1975); *Commonwealth v. Johnston,* 438 Pa. 485, 263 A.2d 376 (1970); *Commonwealth v. Wiggins,* 231 Pa.Super. 71, 328 A.2d 520 (1974). Review of the Commonwealth's case shows no evidence that firearms were displayed as if for sale at the tavern which appellant owned, the site of the alleged sale. More importantly, the evidence shows only two occasions on which appellant sold or traded guns. This is significant since one indicia of a retail sale is the number and frequency of sales made. See *Janel Sales Corp. v. Lanvin Parfums, Inc.,* 396 F.2d 398 (2d Cir. 1968). Evidence indicated that appellant exchanged a .38 caliber revolver and some cash with a neighbor in exchange for a .22 caliber Ruger and a .22 caliber Hornet. Afterwards, on January 3, 1976, appellant allegedly sold a .22 caliber revolver for $75.00 to State Trooper John Preston, the undercover arresting officer, and also sold him a .357 magnum for $135.00. Prior to appellant's arrest, Trooper Preston asked appellant if he had any more guns for sale. Appellant answered negatively and was arrested.

Appellant claims to be a collector of guns, and indeed, the testimony of appellant and of Trooper Preston supports this claim. Of the thirteen firearms seized on appellant's premises at least five were antiques or "collectors items." This was admitted by Trooper Preston under cross-examination. Furthermore, appellant produced evidence that showed that one of the remaining eight firearms was a revolver that belonged to someone other than appellant. As for the sales to Trooper Preston, the trooper himself indicated that it was he who solicited the sale, specifically asking for a .22 caliber revolver and a .357 magnum. The evidence proffered by the

Commonwealth simply is insufficient to justify convicting appellant for violation of a provision that, on its face, only applies to "retail dealers." No firearms were displayed for sale,[5] no sales were solicited, and it was not that appellant endeavored to sell any significant number of guns. Therefore, the issue of appellant's culpability under Section 6112 should not have gone to the jury and we reverse that conviction.

Appellant's second charge was heard at a separate trial, this time before the court sitting without a jury. As previously noted, it was alleged that appellant violated Section 6117,[6] which reads:

"(a) No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on any firearm.

(b) Possession of any firearm, upon which any such mark shall have been changed, altered, removed, or obliterated, shall be prima facie evidence that the possessor has changed, altered, removed, or obliterated the same."

Of the 43 weapons seized, including firearms and rifles, only one allegedly bore an obliterated serial number. Appellant testified that this firearm belonged to a man named Robert Ostrum of Roulette, Pennsylvania, who brought the gun with him to appellant's establishment one evening. Appellant claimed that Ostrum asked if he, appellant, would keep the gun behind the bar while Ostrum was playing pool. Appellant agreed. However, when Ostrum left that night he neglected to retrieve his gun. To collaborate appellant's testimony, appellant called Ostrum to the stand. Ostrum testified that he was and is the owner of the firearm in question, that his gun was scratched when he purchased it,

---

5. Appellant explained that a .22 caliber pistol was kept in its holster near the cash register of the tavern to hopefully discourage would-be robbers.

6. The Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 P.S. § 6117.

and that it still had scratch marks over the serial numbers when he left it with appellant.

Appellant questions whether the evidence was sufficient to support a verdict of guilty beyond a reasonable doubt. We are persuaded by appellant's argument and reverse his conviction under Section 6117.

It is a well-established principle that the test for sufficiency of the evidence is whether, accepting as true all evidence, together with all reasonable inferences therefrom upon which the factfinder could properly have based its verdict, such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt. *Commonwealth v. Hamm,* 474 Pa. 487, 378 A.2d 1219 (1977); *Commonwealth v. Whitfield,* 474 Pa. 27, 376 A.2d 617 (1977); *Commonwealth v. Sullivan,* 472 Pa. 129, 371 A.2d 468 (1977); *Commonwealh v. Smith,* 250 Pa.Super. 460, 378 A.2d 1239 (1977); *Commonwealth v. Henderson,* 249 Pa.Super. 472, 378 A.2d 393 (1977); *Commonwealth v. Keller,* 249 Pa.Super. 384, 378 A.2d 347 (1977). It is equally well established that the evaluation of a witness's credibility is for the factfinder, who may believe all, part, or none of the witness's testimony. *Commonwealth v. Myrick,* 468 Pa. 155, 360 A.2d 598 (1976); *Commonwealth v. Farquharson,* 467 Pa. 50, 354 A.2d 545 (1976); *Commonwealth v. Eckert,* 244 Pa.Super. 424, 432, 368 A.2d 794 (1976); *Commonwealth v. Williams,* 236 Pa.Super. 184, 345 A.2d 267 (1975). Therefore, absent some abuse of discretion, the trier's determination of credibility will not be disturbed on appeal when supported by the record. *Commonwealth v. Williams,* 236 Pa.Super. 184, 345 A.2d 267 (1975); *Commonwealth v. Hickson,* 235 Pa.Super. 496, 344 A.2d 617 (1975).

Appellant asserts that his evidence effectively rebutted the Commonwealth's prima facie case. The Commonwealth, on the other hand, argues that the lower court judge, in his province as the trier of fact, found appellant's testimony and the testimony of appellant's witness, Ostrum, not credible and so rejected appellant's evidence. Though it is possible

that credibility or the lack thereof may have been the deciding factor in the court's determination, we have no way of knowing this for certain, since the trial judge has not provided us with an opinion in support of appellant's conviction.[7]

The record reveals that no meaningful attack was made upon Ostrum's credibility. Rather, the Commonwealth seemed more concerned with learning the name of the dealer from whom Ostrum bought the firearm. If the trial court did not find Ostrum's testimony beyond belief then it seems that appellant undermined the Commonwealth's case. Even though the Commonwealth had the benefit of a statutory "presumption," it is settled that this should not be considered more than a permissible inference, *Commonwealth v. DiFrancesco*, 458 Pa. 188, 329 A.2d 204 (1974). This is especially pertinent where that "presumption" stands as the whole of the Commonwealth's case. *Commonwealth v. Jones*, 242 Pa.Super. 471, 364 A.2d 368 (1976).

We decide, therefore, that the evidence was insufficient to support appellant's conviction under Section 6117.

Accordingly, we reverse both of appellant's convictions.

PRICE, J., dissents and would remand.

SPAETH, J., joins the majority's disposition of No. 1106 October Term, 1977, but at No. 1107 October Term, 1977 would reverse and remand for a new trial on the ground that appellant's motion to suppress evidence should have been granted.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

---

7. An opinion is required to be filed upon receipt of the notice of appeal by the trial judge who entered the order, where the reasons for the order do not appear as of record. Pa.R.Appellate Pro. 1925(a). Over a year has passed since February 22, 1977, the date on which this appeal was filed.