## Commonwealth v. Jarboe

*Edgar B. Bayley*, for Commonwealth.
*Philip J. Murren* and *Kathleen A. O'Malley*, for defendant.

DOWLING, *J.*, November 29, 1979—We are daily accosted with sordid reminders of the offensive, the disagreeable, the unpleasant. Movies and books dramatize and emphasize the horrors, injustices and absurdities of life. Much of the media is given to graphic protrayals of man's inhumanity to man.

This past June 2, Abigail Ellen Jarboe chose to exhibit her opposition to abortion by patrolling the public sidewalk adjacent to the Memorial Hospital, a privately operated institution, carrying a sandwich board depicting on one side colored photos of aborted fetuses and on the other her protestations.

The police told her that while she could display the written side of the placard, the pictures were annoying persons who had gathered on the grounds to enjoy the hospital's annual Strawberry Festival. When she refused to remove this alleged blight from the berries, she was cited for disorderly conduct. Convicted before a district justice, she appeals de novo to this court.

The relevant portion of the statute (Crimes Code, 18 C.P.S.A. §5503) under which Mrs. Jarboe was convicted reads:

"§5503. Disorderly conduct

"(a) Offense defined.—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: . . . (4) creates a hazardous or physically offensive condition by an act which serves no legitimate purpose of the actor."

In the case at hand, the Commonwealth bears the burden of proving each material element of the offense beyond a reasonable doubt: Com. v. Cropper, 463 Pa. 529, 345 A. 2d 645 (1975). This proof must include: (a) that Mrs. Jarboe acted at least recklessly with respect to each material element of the offense; and (b) that her actions created a physically (not emotionally) offensive condition; and (c) that the activity served no legitimate purpose.

What is "physically offensive conduct?" It is not defined. On its face, it appears to be somewhat ambiguous, a situation in itself fraught with problems of denial of due process because of its inability to give fair warning of the specific conduct which is to be proscribed: Smith v. Goguen, 415 U.S. 566,

573 (1974). Is it to be construed as related to its conjunctive "hazardous" and thus mean that it is something capable of causing physical harm? Several principles of statutory interpretation are applicable. First, the General Assembly, the author of section 5503(a)(4), has directed that penal statutes are to be strictly construed in favor of the accused: 1 Pa. C.S.A. §1928(b)(1); Com. v. Darush, 256 Pa. Superior Ct. 344, 389 A. 2d 1156 (1978). Second, the legislature has stated that the purpose of the Crimes Code is to give fair warning of the nature of the conduct declared to constitute an offense. Third, statutory ambiguities may be resolved by resort to prior judicial construction and to the legislative history of the statute.

Section 5503 is based upon section 250.1 of the Model Penal Code. The comments of the drafters of the Model Penal Code indicate that this definition of disorderly conduct "is sufficiently comprehensive to include behavior which, though carried on quietly or privately, would tend to provoke an individual victim to violent reaction. Thus, it includes challenging to a duel, sending a deflamatory letter and eavesdropping." One of the purposes of this statute is to "safeguard civil liberty by careful definition of offenses so that they do not cover, for example, arguing with a policeman, peaceful picketing, disseminating religion or political views." Section 5503 of the Crimes Code would include "stink bombs, the strewing of garbage, nails or other noxious substances, in public passages, turning on the lights in a theater, and an endless variety of other, public annoyances which mischief can conceive." Tentative Draft No. 13 of Model Penal Code, §250.1, pp. 3, 4 and 7.

But more importantly, constitutional considerations limit the applicability of section 5503(a)(4) so as not to permit it to interfere with rights protected under the First Amendment of the Constitution of the United States and article I, section 7 of the Constitution of Pennsylvania. The General Assembly has provided that, in ascertaining the intention of the legislature in enacting a statute, it is to be presumed that the General Assembly does not intend to violate the Constitution of the United States or of the Commonwealth: 1 Pa.C.S.A. §1922(3).

The content of Mrs. Jarboe's speech, i.e., what she expresses through her sign, can, consistent with the free speech clause of the First Amendment, only be regulated "on the basis of imminent danger of a grave substantive evil." Collin v. Smith, 578 F. 2d 1197, 1202 (7th Cir. 1978), cert. den., 439 U.S. 916 (1978). Those situations are limited to where the expression is in the form of obscenity: Miller v. California, 413 U.S. 15 (1973); "fighting words," Chaplinsky v. New Hampshire, 315 U.S. 568 (1942); incitement to riot, Feiner v. New York, 340 U.S. 315 (1951); offensive expression to a "captive" audience, Rowan v. Post Office Department, 397 U.S. 728 (1970) and FCC v. Pacifica Foundation, 438 U.S. 726 (1978); or libel, New York Times v. Sullivan, 376 U.S. 254 (1964). Absent these "evils," government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." Police Department of Chicago v. Mosley, 408 U.S. 92, 95 (1972).

Applying these principles to situations analogous to that presented by the instant case, courts have held that "graphic displays" of contraceptive and

self-abortion devices could not be restricted: Manfredonia v. Barry, 401 F. Supp. 762 (E.D. N.Y. 1975); that expression of pro-life views on abortion cannot be prevented by injunction against picketing, O.B.G.Y.N. Associations v. Birthright of Brooklyn and Queens, Inc., 407 N.Y.S. 2d 903 (App. Div. 1978); that pro-life marchers cannot be denied participation in a parade, North Shore Right to Life Committee v. Manhasset American Legion Post No. 304, 452 F. Supp. 834 (E.D. N.Y. 1978); that publication of abortion advertisements in newspapers cannot be curtailed, Bigelow v. Virginia, 421 U.S. 809 (1975); and that advertisement of contraceptive services to minors cannot be restrained, Carey v. Population Services International, 431 U.S. 678 (1977).

Even if Mrs. Jarboe's actions created a physically offensive condition, her expression cannot be punished unless it was thrust upon a captive audience of persons unable to avert their eyes: Erznoznik v. City of Jacksonville, 422 U.S. 205 (1975). In Erznoznik, an ordinance was ruled invalid which had sought to restrict exhibition of films involving "nudity" at drive-in theaters whose screens were visible from the street. The court found no "captive audience" affected by the offensive films, nor could restriction of the exhibitions be justified as protection of minors, since non-obscene speech cannot be suppressed "solely to protect the young from ideas or images that a legislative body thinks unsuitable for them." Id. at 213-214.

The "captive audience" notion is further clarified by the Supreme Court's holding in Cohen v. California, 403 U.S. 15 (1971), where the court overturned a conviction involving the wearing of a

jacket by a young man inside the Los Angeles County Court House on which was emblazoned the phrase "Fuck the Draft." Even though women and children were present, the expression could not be restricted since those persons were not "powerless to avoid" it. Id. at 22. Cohen is the only case cited by the Commonwealth and it attempts to sustain the conviction by simply distinguishing Cohen on the basis that it involves speech and not conduct, a questionable distinction and one which ignores a host of other decisions dealing with the question.

If this is not enough, we have the additional problem of deciding whether or not Mrs. Jarboe's form and content of expression served "no legitimate purpose." Despite the relaxing in today's society of our moral standards, there remains a large number of persons opposed to abortion. It was not many years ago that in this Commonwealth it was a felony punishable by a five year imprisonment. Though the manner in which the defendant chose to express her view may have been distasteful, it was designed to be effective, i.e., to bring to peoples' attention the extent to which fetuses are formed at certain abortable intervals.

Ralph Nader, when he argues for automobile safety, utilizes pictures of horrible accidents. Can any words be as vivid in depicting the "Holocaust" as pictures of Dachau with its ovens and piles of dead bodies? True, the board of General Motors might not find Mr. Nader's photographs titillating. Nor would Nazis in the docket look with pleasure on the pictorial exhibit of their heinous crimes. One's personal feelings about an issue can hardly be the controlling factor. As Voltaire stated: "I disapprove of what you say, but I will defend to the death your right to say it." Bartlett's Familiar Quotations, p. 418 (14th ed.).

We cannot indulge the facile assumption that you can forbid a particular means of expression without also running a substantial risk of suppressing the concept itself. Censorship of methods can lead to censorship of ideas.

If the Nazis have pemission to parade and if the Klan can march at will, and if in time of war one can walk the corridors of a court house wearing a jacket bearing the words "Fuck the Draft," then surely Mrs. Jarboe can stroll through a strawberry festival with pictures of aborted fetuses.

Oliver Wendall Holmes put it all in one sentence: "The very aim and end of our institutions is just this: that we may think what we like and say what we think."

Accordingly, we find that Mrs. Jarboe's actions were not physically offensive, served a legitimate purpose, and that to hold otherwise would contradict both the United States and Pennsylvania Constitutions right to freedom of speech.

Accordingly, we enter the following

### ORDER

And now, November 29, 1979, defendant's appeal is sustained and her conviction is reversed.