STATE OF MAINE                          UNIFIED CRIMINAL COURT
AROOSTOOK, ss                           DOCKET NO. CR-2022-30237


STATE OF MAINE                    )
                  Plaintiff       )
                                  )
                                  )
vs.                               )        ORDER ON MOTION
                                  )          TO SUPPRESS
                                  )
RYAN SCOTT                        )
                  Defendant       )


By Indictment dated June 9, 2022, Defendant Ryan Scott, is charged with the offenses of: (1) Unlawful Possession of Scheduled Drugs, Class C - 17-A M.R.S.A. §1107-A(1)(B-1)(7); (2) Possession of a Firearm by a Prohibited Person, Class C - 15 M.R.S.A. §393(1)(A-1)(1); (4)[1] Aggravated Unlawful Furnishing of Scheduled Drugs, Class B – 17-A M.R.S.A. §1105-C(1)(B)(1).    On June 21, 2023, Defendant filed a Motion to Suppress generally alleging that the search pursuant to the search warrant exceeded the scope of the warrant in violation of the Defendant's constitutional rights. *U.S. Const. Amend IV; Article 1 §5 Maine Constitution.* The court conducted a hearing on the motion on July 3, 2023. The parties stipulated to the following facts:

1.  Defendant was on probation at the time of the execution of the search warrant and was subject to random search and testing for alcohol and drugs;

---

[1] Count 3, Criminal Simulation, was not presented to the Grand Jury.

2. The search warrant, affidavit, and inventory were admitted into evidence;

3. The first 90 seconds of the body camera footage from Deputy Johnston and Deputy Clark were admitted into evidence;

4. Brittany Scott was searched after exiting what was claimed to be the Defendant's side of the structure and she had illegal substances found on her person; and

5. The supplemental narrative of MDEA special agent Theron Bickford, Jr. dated 4/4/2022 was admitted into evidence.

The court received testimony from Maine Drug Enforcement Agent John Gaddis and the Defendant. Following the hearing and at the request of the parties, the court deferred ruling on the motion to permit the parties to continue to negotiate this matter and AROCD-CR-2016-30436. The court received word that settlement negotiations had broken down. The court has reviewed the evidence presented and the arguments of counsel and hereby issues the following findings and decision:

On the afternoon of March 30, 2022, Maine Drug Enforcement Agency special agent John Gaddis filed a request for a search warrant related to 412 Foster Road, Littleton, Maine. The place sought to be searched was described as "a single-story wood sided residence situated at the end of an approximately 440-foot driveway on the west side of the Foster Road in Littleton, Maine. A mailbox on the Foster Road at the entrance to the residence plainly displays the number '412'." *Search Warrant request at Page 1.* The target of the investigation was Chester Scott. The warrant request was supported by affidavit containing information related to several informants' statements regarding

Chester Scott. A confidential informant informed the affiant that they had been inside Chester Scott's residence at 412 Foster Road in Littleton and had "seen '5 fingers' or 50 grams of fentanyl" and had purchased fentanyl from Chet Scott more than 200 times over the past 6 months." *S.W. Affidavit at Page 4.*

Another informant (CSOI) provided information that they had been to Chester Scott's residence "within the last five days and had seen 40 to 60 stolen firearms." *S.W. Affidavit at Page 3.* The CSOI provided law enforcement with other information that was known to be accurate and reliable. Further, the CSOI indicated that "10 days ago they had seen Chet Scott in possession of 60 grams of fentanyl." *S.W. Affidavit at Page 3.* Chester Scott was on bail for pending drug charges and subject to search conditions with an address of 412 Foster Road, Littleton, Maine. On March 25, 2022, two individuals who were observed leaving the residence were arrested on outstanding warrants and one of the individuals was found to be in possession of cocaine.

The request for the search warrant was granted and the search warrant directed the search of a "single-story wood sided residence situated at the end of an approximately 440-foot driveway on the west side of the Foster Road in Littleton, Maine. A mailbox on the Foster Road at the entrance to the residence plainly displays the number '412'." *Warrant at Page 1.* The search warrant authorized the seizure of scheduled drugs, paraphernalia, firearms and other evidence related to the illicit drug trade. *Warrant at Page 2.*

On the evening of March 30, 2022, eight law enforcement officers participated in the execution of the search warrant at 412 Foster Road in Littleton. Chester Scott and

April Drew were discovered in the driveway to the residence. The residence was secured, and five more individuals were removed, and a pat down search was conducted on Defendant, his spouse Brittany Scott, and their three minor children. With the exception of what was discovered on Brittany Scott, no contraband was found on any of the individuals. Brittany Scott was found in possession of two tinfoil folds, one of which containing a brown powder-like substance believed by the officer to be cocaine, following a TruNarc test.

The names of all encountered individuals were run for warrants and probation conditions. As noted above, the parties stipulated that the Defendant was on probation. If no warrants were discovered, the individuals were permitted to leave the location. No one was placed under arrest and no active warrants were outstanding regarding the seven individuals on the property. Chester Scott and April Drew left the property but returned sometime later and left again. The Defendant did not leave as he had no vehicle and was there with his family.

Prior to the commence of the search, the officers were questioned by the Defendant as to whether they were searching "his side" of the residence. The structure was modest and appeared to be a single residence. Upon further inspection, the structure had two separate entry doors and was divided into two sections. The door to the left, as a guest would approach the structure, lead to a room occupied by Chester Scott. Chester Scott's room had a bed, television, pool table, refrigerator, and an inoperable toilet (due to frozen pipes). There were no stoves or burners in Chester Scott's room. The door to the right lead to a kitchen and living area. The Defendant informed the officers that Chester Scott

used the main portion of the house, including the kitchen, bathroom and living room. To go from Chester Scott's room to the rest of the structure, one has to go outside and then back in the aforementioned door to the right.

There were no distinguishing markings on either door, such as a letter or number designation. There was only one mailbox on the property. It was a single address. There was only one electric meter. There was only the single tax bill for the property. The Defendant informed the officers that Chester Scott was "on the deed" with the Defendant.[2]

Based on the circumstances and information available to the officers, officers searched the entire structure and returned an inventory on April 5, 2022, that noted 8.1 grams of methamphetamine, 3.6 grams of cocaine, .5 grams of fentanyl, and six firearms, including one with an obliterated serial number.

There is no challenge as to the description of the items to be seized[3] or any suggestion that there was a lack of probable cause to believe those items might be found in the place to be searched as described in the search warrant. What is claimed is that the description of the place to be searched was broader than appropriate because it was based upon a mistaken belief that it was a single-story structure and that it contained only one dwelling unit. There is no challenge to the search of Chester Scott's room. The Defendant

---

[2] During cross examination, the Defendant conceded that the record title remained in Nancy and Lewis Scott, both of whom are deceased.

[3] See, State v. Pelletier, 673 A.2d 1327, 1329 (Me. 1996)( "A warrant must describe the property to be seized with such particularity that an executing officer will be able to identify it 'with certainty.' State v. Sweatt, 427 A.2d 940, 949 (Me.1981). The warrant can leave nothing to the discretion of the executing officer as to what is to be taken. Marron v. United States, 275 U.S. 192, 196, 48 S.Ct. 74, 75, 72 L.Ed. 231 (1927)."

contends that the search of the "main house" was a search of his home, and therefore a violation of his 4th Amendment rights.

## DISCUSSION

"Search warrants are not directed at persons; they authorize the search of 'places' and authorize the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized." *Zurcher v. Stanford Daily*, 436 U.S. 547 (1978)(*Citing, United States v. Kahn*, 415 U.S. 143, 155 n.15 (1974). "The scope of a lawful search is 'defined by the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase.'" *Maryland v. Garrison*, 480 U.S. 79, 84-85 (1987)(*Quoting, United State v. Ross*, 456 U.S. 798, 824 (1982)).

"The test of sufficiency of description is that the officers thereby are enabled to ascertain and identify the place intended by reasonable effort." *State v. Brochu*, 237 A.2d 418, 422 (Me. 1967)(*Citing, Steele v. United States*, 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757; *Metcalf v. Wood*, 66 N.H. 176, 19 A. 1091 ('the premises now occupied by Parker Metcalf, situated in Haverhill,' sufficient on its face). "Reasonable certainty is required to meet the constitutional safeguards" . . . but "[a] technical description of the place to be searched is not necessary." *Id.* (*Citing, People v. Watson*, 26 Ill.2d 203, 186 N.E.2d 326; 5 Orfield, Criminal Procedure Under The Federal Rules s 41:43; 4 Wharton's Criminal Law and Procedure ss 1553, 1554. Cf. United States v. Kenney (D.C.D.C.) 164 F.Supp. 891).

As noted above, what is claimed is that the description of the place to be searched was based upon a mistaken belief that it was a single-story structure and that it contained only one dwelling unit. The search warrant directed the search of a single-story wood-sided residence. On the video to the right of the frame, the structure clearly has some construction above the general roofline and a second floor space of some kind. The structure was far from typical residential structure construction that one might see in any residential neighborhood in Maine. The evidence reflected that the second floor space was like a child's lookout rather than living space.

The evidence also made clear that it was a single residence. The fact that there was not an interior door between Chester Scott's room and the remaining portion of the structure is the only factor that suggests the situation requires additional analysis. Although the Defendant contended that Chester Scott's room was entirely separate from the rest of the structure, the court finds that the home was in fact shared by Chester Scott and the kitchen, bath and living room area in the main house were utilized by him. In this sense, the case is distinguishable from *Maryland v. Garrison*, 480 U.S. 79, 84-85 (1987) where the officers were confronted with two separate apartments on the third floor of a multiunit building. The Defendant's home is a single structure and has all of the hallmarks of a single residence, with the curious architectural feature that there is no interior door between Chester Scott's room and the rest of the building. See, *United States v. Mousli*, 511 F.3d 7, 12 (1st Cir. 2007)("The police can validly search a multi-unit dwelling even if the search warrant was only for a single-unit dwelling, provided the police reasonably believed that the dwelling contained only one unit.")

The court finds that the police had a valid search warrant, supported by reasonable information, and that the valid search warrant gave the police the authority to search the entire home, not merely Chester Scott's room. In light of this determination, the court need not address the other contentions raised by the State in support of the search, including: search incident to Defendant's probation conditions (*U.S. v. Knights*, 534 U.S. 112, 119-21 (2001)(Discussing the significantly diminished expectation of privacy of a probationer); search incident to Defendant's probation, claiming reasonable grounds to believe contraband was present based on the allegations in the warrant request combined with the discovery of contraband on Defendant's spouse (*Griffin v. Wisconsin*, 483 U.S. 868, 880 (1987); or the good faith exception to the exclusionary rule (*State v. Weddle*, 2020 ME 12, ¶¶31-37, 224 A.3d 1034, 1045-1047).

Based on the foregoing, the Defendant's Motion to Suppress is DENIED.

Dated: September 12, 2023

_____
Justice, Superior Court