Commonwealth *v.* Levenson, Appellant.

320

Argued September 20, 1972. Before WRIGHT, P. J.,
WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and
PACKEL, JJ.

*Alan J. Davis,* with him *William B. Moyer, Power,
Bowen & Valimont,* and *Wolf, Block, Schorr and Solis-
Cohen,* for appellant.

*Stephen B. Harris,* First Assistant District Attor-
ney, with him *Kenneth G. Biehn,* District Attorney, for
Commonwealth, appellee.

OPINION BY WATKINS, J., April 12, 1973:

This is an appeal by Dr. George Levenson, the de-
fendant-appellant, from the judgment of sentence of
the Court of Common Pleas, Criminal Division, of
Bucks County after conviction by a jury of violating
Sections of The Drug, Device and Cosmetic Act, 35
P.S. §780-4 (q), (x) and (z) ; and from denials of post-
trial motions for a new trial and in arrest of judgment.
The three counts involved include: (1) The dispensing
of dangerous drugs not in the regular course of his

duties as a physician; (2) Maintaining incomplete dispensing records; (3) Failing to affix proper labels to containers of dangerous drugs. He was sentenced to pay a fine of Two Thousand ($2,000) Dollars and undergo imprisonment for one (1) year.

This appeal is from the conviction on the first count, i.e., dispensing dangerous drugs not in the regular course of his duties as a physician. He does not appeal from the conviction on the other counts and readily admits that he failed to keep the proper records and properly label the containers of dangerous drugs.

Dr. Levenson is an Osteopathic physician of good repute who was Chief of Medical Staff and Treasurer of the Delaware Valley Hospital and was a past President of that institution. The primary practice of Dr. Levenson, about 80-85%, was as an anesthesiologist at the hospital. He also conducted a private practice at his home between the hours of 7 and 9 p.m. on four (4) nights a week. It was a general practice, but included a small number of dietary and obesity cases.

The drug dispensed was "Adipex", which was not a narcotic and was not classified as a dangerous drug under federal regulations, but was so classified under Pennsylvania regulations. His testimony shows that "Adipex" is a combination of methamphetamine hydrocholoride and sodium amobarbital. The barbiturate portion of the drug is addicting and the amphetamine portion of the drug is habit forming. The direction given with the drug is that it is a habit-forming drug. The doctor's fee for his services never exceeded Six ($6.00) Dollars per visit, the normal fee, and this included the drugs. He did not count the pills and dispensed as many as 100-125 pills per visit. One witness testified to fifty-five (55) visits in one year receiving a quantity of the drug each time. The doctor admitted that on each occasion he dispensed at least 50-60 pills

to be taken one a day, but he requested the patient to come back in one week when additional drugs were dispensed.

The appellant contends that he had ineffective counsel and argues that in taking only a general exception to the charge of the court and so not preserving errors for appeal and by filing only pro forma motions for a new trial and in arrest of judgment that he was ineffectively represented.

We have held that ordinarily we will not decide a claim of ineffective counsel on direct appeal. *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A. 2d 349 (1967). There are two exceptions to this rule, however, one, where there is "clear and irrefutable on the record proof that counsel was ineffective", *Commonwealth v. Benjamin,* 219 Pa. Superior Ct. 344, 345 (Note 1), 280 A. 2d 625 (1971). Second, where counsel on appeal is other than trial counsel and the question of proper representation arguably appears on the record, public policy and the interest of justice dictates that then such an issue should be considered on direct appeal. *Commonwealth v. Faison,* 437 Pa. 432, 264 A. 2d 394 (1970).

The record in this case does not support the contention of the appellant that he had ineffective counsel. In *Commonwealth ex rel. Washington v. Maroney,* supra, at 604-05: "We cannot emphasize strongly enough, however, that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined

that trial counsel's decisions had any reasonable basis." This record clearly discloses that this appellant was ably represented below.

The Commonwealth suggests that if we were to find counsel ineffective because he failed to preserve issues on appeal by a general exception to the charge that the case should be remanded for new post-trial motions, and not a new trial. The appellant complains that if Dr. Levenson is foreclosed from raising what he considers substantial issues on this appeal because of counsel's failure to perfect the record below that he is actually being denied his right to appeal. However, instead of remanding as suggested by the Commonwealth, under the circumstances of this case, we will dispose of the objections raised whether or not it is doubtful that they could amount to fundamental error and not foreclose consideration on appeal in the interest of justice and time.

The contention that the indictment is improper and ground for reversal because it stated "regular course of his duties" instead of "regular course of his profession, employment or business" is without merit. The argument is nit-picking. "Every indictment shall be deemed and adjudged sufficient and good in law which charges the crime substantially in the language of the act of the assembly prohibiting the crime, and prescribing the punishment, if any such there be, or if a common law, so plainly that the nature of the offense charged may be easily understood by the jury." Act of March 31, 1860, P. L. 427, §11, 19 P.S. §261.

At one point in the trial on cross-examination, the doctor was questioned about a patient wearing a "black jacket" and whether he could remember a group of young men wearing "black jackets with flags on the jacket and with the name 'The Breed' designated on the jacket." The doctor answered that he remembered

a group of people sitting on the floor but did not remember their attire. Objections to these questions were overruled by the court below and the appellant contends he was prejudiced thereby as it conjured up the image that he was catering to drug addicts. This complaint is without merit.

The court below did not err in excluding reputation evidence that the appellant was an "ethical practitioner". The appellant was permitted to call sixteen (16) witnesses to testify as to his good reputation, for peace and good order and his good morals. It seems that "ethical conduct" is included in the term "good morals" and as no foundation was laid by the appellant to give the term meaning to the jury it might serve only to confuse them. The court emphasized in its charge the importance of the reputation testimony and charged that it was substantive evidence.

Agent O'Keefe, the Commonwealth's chief witness, testified that he obtained drugs from the appellant. The witness weighed 152 pounds and was 6'2" tall. The court made a comment as follows: "Is that dripping wet with clothes on?" Counsel for the appellant at side bar objected strenuously for what he alleged was a prejudicial remark indicating that the witness was skinny and so in a statement the court told the jury: "THE COURT: Members of the jury, I apologize for any levity I may have injected in the case. It was entirely unintentional on my part. At times I have a propensity to do that, and I'll try to curb it in the future. Any reference that I made as to his weight, whether it was dripping wet, or with clothes on or otherwise was not intended in any way as being other than by the way of a bit of levity. In other words, it was just to lighten the tension. It's not intended to reflect in any way upon anything whatsoever. It was not intended to reflect upon the witness's physique be it slight, medium,

or heavy, or in any other way. That reference by myself should be disregarded by you and should have no weight whatsoever in this case."

"An accepted guide in determining prejudicial effect is that, if the remark may be said with fair assurance to have had but a slight effect upon the jury, if any at all, and one is not left in doubt that it had no substantial influence in the case, it will not vitiate an otherwise fair trial." *Commonwealth v. Anskate,* 221 Pa. Superior Ct. 122, 125, 289 A. 2d 156 (1972).

It is apparent that the remark did not create a situation so prejudicial so to prevent a fair trial. The witness was before the jury and they could examine, first hand, his physical appearance. The court did not abuse its discretion in denying the motion for a mistrial. *Commonwealth v. Hawkins,* 448 Pa. 206, 292 A. 2d 302 (1972). The court moved expeditiously to correct any adverse influence that might have been generated by the remark.

Appellant contends that it was fundamental error to instruct the jury that a physician is automatically guilty of the illegal sale of dangerous drugs whenever he ignores record-keeping requirements. The lower court charged the jury as follows: "Dangerous drugs are likewise not dispensed in the regular course of business of the practitioner if they are dispensed under such circumstances whereby the practitioner does not do those things which are required by law to be done in conjunction therewith, such as record-keeping, or such as noting certain information on the container in which they are dispensed."

The Act of 1961, supra, sets forth three (3) separate prohibitions. They are as follows:

"The following acts and the causing thereof within the Commonwealth are hereby prohibited:

"(q) The possession, control, dealing in, dispensing, selling, delivery, distribution, prescription, trafficking in, or giving of, any dangerous or narcotic drug. . . .

"(x) The sale at retail or dispensing of any dangerous drug to any person, except to one authorized by law to sell, dispense, prescribe or possess such drugs, unless upon the written or oral prescription of a person licensed by law to prescribe such drug and unless compounded or dispensed by a registered pharmacist or under the immediate personal supervision of a registered pharmacist, or the refilling of a written or oral prescription for a dangerous drug, unless such refilling is authorized by the prescriber either in the original written prescription or by written confirmation of the original oral prescription. The provisions of this subsection shall not apply to a practitioner licensed to prescribe or dispense such drugs, who keeps a record of the amount of such drugs purchased and a dispensing record showing the date, name and quantity of the drug dispensed and the name and address of the patient. . . .

"(z) The dispensing of a dangerous drug by a practitioner otherwise authorized by law so to do without affixing to the container in which the drug is sold or dispensed a label bearing the name and address of the practitioner, the date dispensed, the name and address of the patient and the directions for the use of the drug by the patient."

The fact that a defendant does not properly label dangerous drugs which he dispenses or that his office record of the dispensation of the dangerous drugs are not kept according to law is no indication that this drug was improperly dispensed. The judge in his charge made it apparent to the jury that if the defendant who would not contest the charges of improper labeling and record-keeping was admittedly guilty of these acts, he would then be guilty of the charge of unlawful dispensing of dangerous drugs.

The court later expanded on the items to be considered by the jury with regard to improper dispensing. He did not in any way remove the condition directing the jury to find the defendant guilty of this charge because of his admission of improper labeling and record-keeping.

This being so, we are led to the problem of the concurrent sentences as rendered by the lower court. The defendant-appellant on being found guilty on any one of the three charges could have received the same sentence as imposed by the court below in this case. However, the court below indicated that the only reason the defendant was in court and on trial was that he unlawfully dispensed dangerous drugs and not merely because his record-keeping and labeling was not according to the law. We are without question then led to the conclusion that the reason for the sentence imposed in this manner by the court below was because the jury found the defendant guilty of the unlawful dispensing of dangerous drugs. It would be of little avail to send this record back to the court below for re-sentencing because of the above since a like sentence would not be improper.

We, therefore, reverse the judgment of sentence of the lower court and grant a new trial.

WRIGHT, P. J., would affirm on the opinion of GARB, J.