396 A.2d 380

**COMMONWEALTH of Pennsylvania**

v.

**Stanley Q. WEST, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 31, 1977.

Decided Dec. 22, 1978.

248

Gregory V. Smith, Williamsport, for appellant.

Robert F. Banks, First Assistant District Attorney, Williamsport, for Com., appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, President Judge:

This case involves a medical practitioner who was convicted of thirty-five counts of violation of the Controlled Substance, Drug, Device and Cosmetic Act of 1972, April 14, P.L. 233, § 13(a)(12) 35 P.S. § 780–113(a)(12).[1] He was sentenced to three to seven years imprisonment, and ordered to pay a fine of fifteen hundred dollars. The defendant, Stanley Q. West, now appeals to this court, alleging seven areas of error. He contends: first, that Section 13(a)(12) of the Controlled Substances Act does not apply to medical practitioners; second, that the information should have been quashed because of pre-arrest delay; third, that an application for suppression of evidence should have been granted; fourth, that appellant was not given a fair trial because of prosecutorial misconduct; fifth, that the trial judge erred in permitting inquiry into appellant's record-keeping of controlled substances dispensed for a two year period; sixth, that evidence of other possible crimes and cross-examination of appellant regarding those incidents should have been excluded; and finally, that the sentence imposed was illegal in that it exceeded the statutory maximum. We disagree

1. That section proscribes "the acquisition or obtaining of possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge."

with appellant's first six contentions; we do, however, agree that the sentence was illegal, and we therefore reverse the judgment and remand for resentencing purposes only.

The prosecution of appellant arose from the filling of some thirty-five [2] prescriptions for methaqualone (commonly known as quaaludes) over a six month period. A licensed physician, appellant had written the prescriptions in the names of local patients, but had personally presented them at Lehman's Pharmacy in Jersey Shore, where appellant practiced. The pharmacists filled each prescription under the assumption that appellant would deliver the drugs to the named patients. As a professional courtesy, appellant was able to purchase the drugs at cost.

At trial, testimony of local mail carriers, voter registrars, and tax clerks established that thirty-two of the thirty-five named patients did not exist in Lycoming County. The other three individuals did reside in the area, but had never received the prescribed drugs from appellant.

Other pertinent facts adduced at trial concerned appellant's professional career. He began practicing medicine in 1953, and moved to Lycoming County in 1969. His first office in Jersey Shore was destroyed in the 1972 flood. Subsequently, he has had offices in a camper parked in a friend's driveway, an old motorcycle showroom, and his mobile home.

## I.

Appellant's first argument questions the applicability of Section 13(a)(12) of the Controlled Substance, Drug, Device and Cosmetic Act [hereinafter referred to as Act] to practitioners. Appellant contends that because they are allowed by statute to possess and distribute controlled substances, the subsection in question was not meant to apply to physicians. We find this argument untenable.

2. Thirty-seven prescriptions had originally been involved; however, charges on two of those were subsequently dropped.

The purpose of any statute such as the one in issue here is to regulate the distribution of drugs, avoid abuse, and insure proper medical use. Throughout the statute, the word "practitioner" is used, and is defined to mean:

A physician, osteopath, dentist, veterinarian, pharmacist, podiatrist, nurse, scientific investigator, or other person licensed, registered or otherwise permitted to distribute, dispense, conduct research with respect to or to administer a controlled substance, other drug or device in the course of professional practice or research in the Commonwealth of Pennsylvania . . .[3]

The legislature was careful to distinguish between practitioners and laypersons when such a distinction was warranted.[4] But when that distinction is not made, it is clear that the provision is intended to apply to *all* persons, including practitioners. The section in question here makes no distinction—it must apply equally to laypersons and practitioners.

It is instructive to note that the same argument was advanced by a physician in *United States v. Moore*, 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975). The defendant was convicted of sale of a controlled substance under a federal statute similar to Pennsylvania's controlled substance act.[5] Writing for a unanimous court, Justice Lewis Powell stated: "We think the statutory language cannot fairly be read to support the view that all activities of registered physicians are exempted from the reach of § 841 simply because of their status." 423 U.S. at 131, 96 S.Ct. at 340. This case definitively holds that doctors have no more authority to violate drug laws than do laypersons. It certainly could not have been the intent of the Pennsylvania legislature to

**3.** Section 2 of the Act, 35 P.S. § 780–102.

**4.** *See, e. g.,* 35 P.S. § 780–113(a)(10), proscribing sale of drugs at retail "except . . . by a practitioner"; 35 P.S. § 780–113(a)(15), forbidding the dispensing of certain narcotic drugs "unless upon . . . prescription of a person licensed by law to prescribe such drug . . ."

**5.** The Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.* Defendant was convicted of violating § 841(a)(1).

exclude practitioners from the reach of 35 P.S. § 780–113(a)(12) merely because of their status.

## II.

■ The second argument made by appellant is that the information against him should have been quashed because of pre-arrest delay. The alleged offenses occurred between September 25, 1975, and March 5, 1976; the prescriptions were taken from the pharmacy March 17, 1976; and charges were filed May 11, 1976—thus, a period of less than two months elapsed. Such a short amount of time certainly cannot be said to be unreasonable; that time period was in fact necessary for investigation. This court has recently held that a delay of one year between offense and arrest was reasonable to conduct a narcotics investigation, and did not deny the defendant due process of law. *Commonwealth v. Cluck*, 252 Pa.Super. 228, 381 A.2d 472 (1977).[6] Appellant maintains that the two month delay prejudiced his ability to locate patients and prepare a defense. The possibility of prejudice must, of course, be weighed against the "reasonableness of the delay necessitated by the conduct of an effective investigation." *Commonwealth v. McCloud*, 218 Pa.Super. 230, 236, 275 A.2d 841, 844 (1971). But it is difficult to imagine how a thorough investigation into thirty-five drug charges could be conducted in a shorter period than that which elapsed here. The police must be given a reasonable time to diligently pursue an investigation. A two month delay is certainly reasonable, and appellant was not prejudiced.

## III.

■ An application to suppress evidence was filed by appellant, alleging that the prescriptions in issue had been

6. *See also United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), wherein an eighteen-month delay was found reasonable as good faith investigative delay. The Supreme Court held: "that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." 431 U.S. at 796, 97 S.Ct. at 2052.

unlawfully seized from Lehman's Pharmacy.[7] The court below denied the application, holding that appellant lacked standing to challenge the search. In light of the four requirements to establish standing, set forth in *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973), we agree. Those requirements state that an individual has standing to contest a search and seizure where he or she: 1) was present on the premises at the time of the contested search and seizure; 2) has alleged a possessory interest in the evidence seized; 3) was charged with an offense which includes as an essential element of the prosecutor's case the element of possession at the time of the contested search and seizure; or 4) has a proprietary or possessory interest in the searched premises. 411 U.S. at 229, 93 S.Ct. 1565. Only the second element applies to the case here—appellant has alleged that a physician has a possessory interest in prescriptions written for patients. But once those prescriptions are presented to be filled by a pharmacist, they become part of the pharmacy's records—a record of drugs dispensed, required to be kept by state law. These records are available for inspection at any time by state drug agents, but are not available to physicians once they have been surrendered to the pharmacy. Thus, appellant had no possessory interest in the prescription forms which were seized from the pharmacy. Consequently, appellant lacked standing to challenge the search.

Even if appellant could show some possessory interest in the prescription records, his challenge to the admission of the evidence would fail because the search was made with the consent of one with an even greater possessory interest in the prescription records—the owner of Lehman's Pharmacy. It is hornbook law that a warrantless search is valid if made with the consent of the owner or possessor of the

---

7. The prescriptions were taken from the pharmacy by an agent of the Bureau of Drug Control of the Pennsylvania Department of Justice. The agent went to the pharmacy and asked to see certain drug records; the pharmacist on duty, knowing the agent from previous contacts, turned the files over for inspection. Appellant was not present during the search.

premises. Here, the pharmacist/owner had authority to consent to the search of his records, and therefore the search and subsequent seizure of the prescription forms were valid. Appellant's application to suppress was properly denied.

## IV.

█ Appellant contends fourthly that, due to prosecutorial misconduct, he did not receive a fair trial. He specifically alleges that the Commonwealth attempted to create a prejudicial atmosphere during the trial. Testimony was offered, over the objections of defense counsel, as to appellant's finances, his failure to report income to the Internal Revenue Service during two years, and the street value of quaaludes—all issues which the prosecution deemed important to show motive, but which the defense argued were improper and prejudicial.

We have examined the record very carefully, and conclude that the lower court did not abuse its discretion in admitting this evidence. Appellant argues that the testimony could reasonably lead the jury to believe that he was involved in other crimes or improprieties. This is, of course, an area which must be carefully scrutinized because "the effect of such testimony upon a jury [of testimony proving involvement in other crimes] is nevertheless bound to create prejudice and an emotional reaction on their part against the defendant." *Commonwealth v. Burdell*, 380 Pa. 43, 47, 110 A.2d 193, 195 (1955). There are, however, recognized exceptions that make the evidence admissible; a most important one, applicable here, permits evidence that is probative of motive. *Commonwealth v. Peterson*, 453 Pa. 187, 307 A.2d 264 (1973). It is then within the realm of the trial judge to determine whether the prejudicial impact is outweighed by the probative value of the evidence. The testimony admitted against appellant was highly probative of his motives for writing the prescriptions. Proof that quaaludes had limited medical use yet a high street demand and value was important to demonstrate what the appellant's motives could have been in obtaining the drugs by deception. Since the evidence offered here was not proof positive of other crimes,

we believe that any prejudicial effect upon the jury was outweighed by the probative value of the testimony.

■ A second aspect of the prosecutorial misconduct alleged by appellant concerns a statement made by the assistant district attorney during his closing argument. The record indicates that the prosecutor characterized a statement made by appellant as a "cock and bull story." Defense counsel immediately objected and moved for a mistrial; however, the trial judge denied the motion and gave the jury a carefully worded cautionary instruction.[8] In light of this instruction, and the cases in Pennsylvania, the prosecutor's statement was not so inflammatory as to prejudice the defendant [appellant] and require a new trial.

The oft-cited test for determining whether a new trial is necessary was set forth in *Commonwealth v. Pfaff*, 233 Pa.Super. 153, 335 A.2d 751 (1975):

> There is no prophylactic rule, however, that mandates reversal for every improper comment. Our Supreme Court has ordered a new trial in the following types of situations: one, where the prosecutor brands the appellant with epithets depicting him as vicious or criminal in nature, thereby arousing the jury's passions or prejudices . . . ; two, where the prosecutor comments from personal knowledge or experience on the *guilt or innocence* of the accused, thereby implying the existence of some special or additional information not before the jury . . ; three, where the prosecutor's comments are not a fair statement of the evidence in the case, thereby misleading the jury and usurping its function. [Citations omitted].

233 Pa.Super. at 161, 335 A.2d at 755.

The assistant district attorney here "did not make a derogatory comment about appellant or give his personal opinion of appellant's guilt or innocence," *Commonwealth v. Eckert*, 244 Pa.Super. 424, 433, 368 A.2d 794, 798 (1976), nor

---

8. The court informed the jury: "Once again, ladies and gentlemen, I will remind you that it is improper for counsel for either side to express a personal opinion, and you should not take any statement by either attorney as a personal belief. Attorneys are advocates for either side, and you should take their statements as such."

did he misstate the evidence. In *Eckert,* the prosecutor had referred to a statement of the defendant's as being a "song and dance." The court held that such a statement did not require a mistrial. Another similar case is *Commonwealth v. Martinolich,* 456 Pa. 136, 318 A.2d 680 (1974). There, the prosecutor called defendant's testimony a "tale"; but it was held that a prompt cautionary instruction was effective to cure any possible prejudice.

We find that the prosecutor's statement, although perhaps not made in the best judgment, was not cause for a mistrial. The judge's curative instruction was prompt and well-worded; his denial of the motion for mistrial was not improper.

## V.

■ The next argument of appellant is that the court erred in allowing testimony pertaining to his record-keeping of certain dispensed drugs. Appellant also objected to the court's instructing the jury in that regard. He contends that because he was not charged with violation of the record-keeping section of the Controlled Substances Act,[9] allowing such evidence would implicate him in other crimes. We, however, agree with the lower court that inquiry into appellant's records was appropriate to rebut his defense of proper distribution of Quaaludes.[10] The court below stated that "any failure by the defendant to keep records could give rise to a reasonable inference of a consciousness by the defendant that the manner in which he was obtaining the drugs was illegal." Lower court opinion at p. 13.

**9.** Section 12 of the Act, 35 P.S. § 780–112(b) requires that:
Every practitioner licensed by law to administer, dispense or distribute controlled substances shall keep a record of all such substances administered, dispensed or distributed by him, showing the amount administered, dispensed or distributed, the date, the name and address of the patient . . . Such record shall be kept for two years from the date of administering, dispensing or distributing such substance and shall be open for inspection by the proper authorities.

**10.** Appellant testified in his own defense that he had given the patients named on the prescription forms the prescribed number of Quaaludes from his own office stock, and that he had the prescriptions filled merely to replace those taken from the supply.

The sole case cited by appellant in support of his argument is *Commonwealth v. Levenson*, 225 Pa.Super. 318, 303 A.2d 838 (1973). There, our court stated:

The fact that a defendant does not properly label dangerous drugs which he dispenses or that his office record of the dispensation of the dangerous drugs are not kept according to law is no indication that this drug was improperly dispensed.

225 Pa.Super. at 326, 303 A.2d at 843.

We cannot interpret this clause as meaning that record-keeping is not a proper subject of inquiry when charges of illegal drug dispensation are in issue. The facts in *Levenson* differ substantially from those here. Dr. Levenson was convicted of three counts: dispensing dangerous drugs not in the regular course of his practice, maintaining incomplete records, and failing to properly label containers of dangerous drugs. The doctor conceded his guilt of the second two charges, and only challenged the court's charge to the jury regarding the first count—i. e. a physician is "automatically guilty of the illegal sale of dangerous drugs whenever he ignores record-keeping requirements." Id., 225 Pa.Super. at 325, 303 A.2d at 842. Thus, the court's statement, cited above and by appellant, does not go to the relevance of such evidence; rather it only means that evidence of faulty record-keeping cannot be the sole evidence to convict an individual of illegal dispensation.

We conclude, therefore, that the evidence was relevant to rebut appellant's contentions of the propriety of his writing of the prescriptions, and was admissible.

## VI.

Appellant's sixth argument, i. e. that the lower court committed reversible error by allowing evidence of other possible crimes, is merely repetition of arguments four and five. He cites the proposition that evidence of other crimes is generally inadmissible, but ignores the exceptions that allow evidence of other crimes that tends to establish, inter alia, motive and intent. *Commonwealth v. Peterson*, supra, 453 Pa. at 197, 307 A.2d at 269.

Appellant's references to evidence of other crimes are vague, and in essence only a restatement of his objections to the evidence of his failure to keep proper records. It is therefore unnecessary to dwell on these contentions.

## VII.

■ Finally, appellant contends that the sentence imposed was illegal because it exceeds the statutorily prescribed maximum of one year imprisonment.[11] The lower court chose not to impose consecutive sentences on the thirty-five convictions; rather, it sentenced appellant to three to seven years. This sentence appears to be a "lumping" of two or more sentences, which is illegal. *Commonwealth ex rel. Rogers v. Ashe*, 133 Pa.Super. 364, 3 A.2d 45 (1938). The Commonwealth has conceded that the sentence imposed was illegal per se; therefore, we remand for resentencing.

Judgment of sentence is reversed, and the case remanded for resentencing consistent with this opinion.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

11. Section 13(b) of the Act, 35 P.S. § 780–113(b).