**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Foster D. FARONE, Appellant.**

Superior Court of Pennsylvania.

Argued April 9, 2002.

Filed Sept. 26, 2002.

Thomas N. Farrell, Pittsburgh, for appellant.

Roger M. Bauer, Asst. Dist. Atty., Meadville, for Commonwealth, appellee.

Before: MUSMANNO, ORIE MELVIN and TAMILIA, JJ.

OPINION BY MUSMANNO, J.:

¶ 1 Appellant Foster Farone ("Farone") appeals from the judgment of sentence entered following his conviction of two counts of unlawfully obtaining possession or acquiring a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge ("unlawful acquisition of a controlled substance"), one count of possession of a controlled substance, and two counts of theft by unlawful taking.[1] We vacate the judgment of sentence and remand for resentencing.

¶ 2 Farone was employed as a "floating" pharmacist by Eckerd Drug Stores ("Eckerd"). As part of Farone's employment, Eckerd assigned him to work as needed at various store locations. In early March, 1998, Farone reported to work at the Eckerd store in Conneaut Lake, Pennsylvania. While there, store manager Genevieve McKalip and pharmacist Robert Hirosky ("Hirosky") observed Farone taking pills from a bottle and placing them into his pocket. During the investigation of Farone's activities, Eckerd's loss prevention representative, Michael Sechrist ("Sechrist"), observed Farone taking and ingesting various amounts of pills, by means of a video from a hidden surveillance camera. When confronted by Sechrist, Farone admitted that he had taken Hydroco-

---

**1.** *See* 35 P.S. §§ 780–113(a)(12), 780–113(a)(16), and 18 Pa.C.S.A. § 3921(a), re-    spectively.

done tablets from the Conneaut Lake Eckerd store that same day, and had previously taken tablets from the Linesville store.

¶ 3 Following Farone's arrest and a bench trial, the trial court convicted Farone of the aforementioned charges. The trial court subsequently sentenced Farone to consecutive probation terms of five years for each conviction of unlawful acquisition of controlled substances. For each conviction of theft by unlawful taking, the trial court imposed concurrent probation terms of two years. Finally the trial court imposed a concurrent probation term of one year for Farone's conviction of possession of controlled substances. Thereafter, Farone filed the instant timely appeal.

¶ 4 In this appeal, Farone challenges the sufficiency of the evidence underlying his convictions of unlawful acquisition. Farone also claims that the verdicts are against the weight of the evidence as to these charges.

¶ 5 In reviewing the sufficiency of the evidence, we must determine whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offenses beyond a reasonable doubt. *Commonwealth v. Hopkins*, 747 A.2d 910 (Pa.Super.2000).

¶ 6 A person commits the crime of unlawful acquisition of a controlled substance if he acquires or obtains possession of a controlled substance "by misrepresentation, fraud, forgery, deception or subterfuge." 35 P.S. § 780–113(a)(12). By contrast, a person commits the crime of theft by unlawful taking "if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S.A. § 3921(a).

¶ 7 The Commonwealth contends that Farone's conduct falls within the plain meaning of the words "deception" and "subterfuge." Appellee's Brief at 10. The Commonwealth provides the following definitions of these terms:

*Deception:* Act of deceiving. Webster New Collegiate Dictionary (1974). Further, Black's Law Dictionary 6th Ed. (1990) defines it as: The act of deceiving, intentionally misleading by falsehood spoken or acted.

*Subterfuge:* Deception by artifice or stratagem in order to conceal, escape or evade. Webster New Collegiate Dictionary (1974). Further, Black's Law Dictionary 6th Ed. (1990) defines it as: That to which one resorts for escape or concealment.

*Id.* at 10.

¶ 8 Farone asserts that the crime of unlawful acquisition of a controlled substance requires the Commonwealth to establish an additional element of deception or subterfuge, an element which is not required to establish theft by unlawful taking. Farone claims that the Commonwealth failed to establish this additional element.

¶ 9 The statutory language of 35 P.S. § 780–113(a)(12) demonstrates that an additional element, *i.e.,* "misrepresentation, fraud, forgery, deception or subterfuge," is required to establish the crime of unlawful acquisition of a controlled substance. Case law interpreting section 780–113(a)(12) likewise establishes that an additional element is required. In *Commonwealth v. Larsen,* 452 Pa.Super. 508, 682 A.2d 783 (1996), this Court upheld a conviction under section 780–113(a)(12), where the evidence established a deliberate and calculated "scheme" by which the defendant/appellant, a Pennsylvania Supreme Court Justice, used his employees in order

to obtain the controlled substance Diazepam. We explained:

> Once the appellant put in motion a scheme to deceive the pharmacists who dispensed drugs prescribed for his employees, but intended for his use, the subsequent possession of the drug was not lawful. Rather, it was a deception perpetrated upon a third party/pharmacist by the concerted acts of the appellant's unindicted co-conspirator/physician.
>
> * * *
>
> By contriving to obtain a controlled substance (Diazepam) by the use of his employees, the appellant precluded each pharmacist from complying with housekeeping measures (matching records of dispensed controlled substances with a patient) mandated by 35 P.S. § 780–112(a) (for two years). No amount of importuning of efforts to keep the appellant's mental illness and treatment from the public can minimize the fact that deception was at the heart of the appellant's scheme to achieve anonymity....

*Id.* at 788, 789 (emphasis added). Interestingly, in describing the intent element of the offense, this Court stated:

> Subsection 12 of Section 780–113 prohibits the acquisition of controlled substances by "misrepresentation, fraud, forgery, deception or subterfuge," which conduct is deliberate behavior calculated to deceive.

*Id.* at 793 n. 11 (emphasis added). Thus, the Court in *Larsen* recognized that the acquisition of a controlled substance by means of a deceptive scheme constituted a violation of section 780–113(a)(12).

¶ 10 In *Commonwealth v. West*, 261 Pa.Super. 246, 396 A.2d 380 (1978), this Court affirmed a judgment of sentence under section 780–113(a)(12) where the Commonwealth established that (a) the ap-

pellant/physician had written prescriptions in the names of purported local patients; (b) the appellant/physician had personally presented the prescriptions at the pharmacy; and (c) the evidence established that 32 of the 35 patients did not exist in the county, and the remaining three patients did not receive the prescribed drugs. The pharmacist had filled the prescriptions under the assumption that the appellant/physician would deliver the drugs to the named patients. *Id.* at 381. Although the physician claimed that section 780–113(a)(12) did not apply to medical practitioners, this Court declined to exempt physicians from its provisions.

¶ 11 Interestingly, in *Commonwealth v. Noveroske*, 255 Pa.Super. 97, 386 A.2d 154 (1978), this Court reversed a judgment of sentence for the unlawful acquisition of a controlled substance entered against nurse Susan Noveroske ("Noveroske"). In that case, Noveroske had mistakenly mixed 100 mg. of Demerol in a syringe, although the chart had authorized only 50 mg. for that patient. When Noveroske realized her mistake, she disposed of the syringe containing the improper dosage, and secured another syringe containing the proper amount of Demerol. Later, on the narcotics chart, Noveroske charged the patient for both syringes of Demerol. Noveroske did not report her error to anyone. At the end of the shift, the registered nurse in charge of the unit discovered that 500 mg. of Demerol were missing. Noveroske was convicted of unlawful acquisition of controlled substances related to the missing Demerol.

¶ 12 In reversing the judgment of sentence, this Court concluded that the evidence did not demonstrate that Noveroske "intended to acquire possession of a controlled substance by misrepresentation, fraud, etc." *Id.* at 155. In so holding, the Court stated that "[a] conviction can be

based on circumstantial evidence, but if the conviction is based wholly on inferences, suspicion and conjecture, it cannot stand." *Id.* at 156 (quotation omitted). The Court concluded that the evidence was not sufficient to convict Noveroske under section 780–113(a)(12), especially where the evidence demonstrated that other personnel had access to the drug cabinet. *Id.*

¶ 13 In this case, the additional element of a deceptive scheme or subterfuge is not present. At trial, pharmacist Hirosky testified that, while working at the Conneaut Lake store, he observed Farone "holding a bottle in his hand, putting drugs into his other hand, plac[ing] the drugs into his pocket and then put[ting] the bottle on the shelf." N.T., 6/20/01, at 14. The bottle came from a shelf containing generic Hydrocodone products. *Id.*

¶ 14 Sechrist testified that, while employed as an Eckerd loss prevention representative, he placed hidden cameras at the Eckerd store in Linesville, Pennsylvania. Sechrist installed the cameras on Friday, February 27, 1998. *Id.* at 19. On the following Monday, Sechrist removed the tapes. *Id.* at 21. Sechrist then viewed the tape in Eckerd's Pittsburgh office. One tape depicted Farone placing pills into his pocket, and ingesting some pills. *Id.* at 24. Sechrist later confronted Farone about the tape, at which time Farone admitted to taking the hydrocodone pills. *Id.* at 28.

¶ 15 The Commonwealth contends that Farone's employment as a floating pharmacist was part of an overall deceptive scheme or subterfuge to unlawfully acquire controlled substances. However, there is no evidence to support this inference. There is no evidence that Farone chose his career as a means to procure controlled substances, or that he chose to work as a "floating" pharmacist as part of a deceptive scheme. Any finding of a deceptive strategy on the basis that Farone was employed as pharmacist on a "floating" basis would be the result of inference, suspicion and conjecture, and not the proper basis for a criminal conviction.[2] *See Noveroske,* 386 A.2d at 156.

¶ 16 The Commonwealth also asserts that Farone engaged in deception and subterfuge when he stepped around the corner to place the pills into his pocket. However, while the evidence supports Farone's conviction of theft by unlawful taking, it is not sufficient to establish the crime of unlawful acquisition of controlled substances pursuant to 35 P.S. § 780–113(a)(12). The additional element of deception or subterfuge is simply not present. Accordingly, Farone's convictions of unlawful acquisition of controlled substances cannot stand.

¶ 17 Because our disposition affects the trial court's sentencing scheme, we vacate Farone's judgment of sentence and remand for re-sentencing on all remaining convictions. *See Commonwealth v. Goldhammer,* 512 Pa. 587, 517 A.2d 1280 (1986) (holding that where the appellate court vacates one of multiple convictions and thereby alters the sentencing scheme of the trial court, it is within the appellate court's authority to remand the matter for re-sentencing).

¶ 18 Judgment of sentence vacated; case remanded for re-sentencing consistent with this Opinion; Superior Court jurisdiction relinquished.

---

**2.** Under the Commonwealth's theory, the store's pharmacist, cashiers, and other employees would be subject to conviction under section 780–113(a)(12) merely by virtue of their employment. We cannot conclude that the fact of a defendant's employment, without more, gives rise to an inference of a deceptive strategy or subterfuge.